# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terrence Andrew Harris, : 
                 Appellant : 
                 : 
                 : 
          v. :   No. 1199 C.D. 2021
                 :   Submitted: February 17, 2023
                 : 
Pennsylvania Department : 
of Corrections, et al. : 

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
               **HONORABLE MICHAEL H. WOJCIK,** Judge
               **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: November 8, 2023**

    Terrence Andrew Harris (Harris), an inmate incarcerated at the State Correctional Institution at Somerset (SCI-Somerset), appeals, pro se, from the Order entered in the Court of Common Pleas of Somerset County (trial court) on September 28, 2021, sustaining in part and overruling in part the Department of Corrections, et al.'s[1] (collectively, Appellees) preliminary objections (POs) to Harris's Complaint and dismissing Harris's Complaint as sovereign immunity bars Harris's causes of action against Appellees. After review, we affirm.

---

[1] Harris named the following as defendants in his Complaint: Pennsylvania Department of Corrections Secretary John E. Wetzel and Staff; Director of the Office of Special Investigations and Intelligence – Unknown and Staff Chief; Secretary's Office of Inmate Grievance and Appeals – Dorina Varner and Staff; Assistant Chief Grievance Officer Keri Moore and Staff; SCI-Somerset Facility Manager/Superintendent Melissa R. Hainsworth (Superintendent); SCI-Somerset Facility Grievance Coordinator Allen Joseph; SCI-Somerset Facility Grievance Coordinator Christie L. Schenck; SCI-Somerset Grievance Officer/B&C Unit Manager Eric Frazier (Unit Manager); SCI-Somerset Head of Internal Security Captain Brothers (Security Captain) and Staff; Major Price; Mrs. Pyle; Corrections Emergency Response Team (CERT) – All Staff Present and in Leadership of such during this time. (Complaint (Compl.) at 2.)

## I.      BACKGROUND

Harris filed the Complaint with the trial court in March 2018, listing 40 causes of action against Appellees, including "civil rights/criminal injustices & violations[;]" "failure to properly investigate inmate grievances[;]" annoyance, anxiety, emotional distress, false security, harassment, mental anguish, profane abuse, psychological distress[;]" "violation of 28 U.S.C. § 1983, § 1986, & § 1987[;]" and "conduct unbecoming under color of law or in personal capacity[.]" (Complaint (Compl.) at 19.)[2] Appellees removed the case to federal court, and the United States District Court for the Western District of Pennsylvania (district court) dismissed the entire Complaint. *Harris v. Pa. Dep't of Corr.* (W.D. Pa., No. 3:18-cv-99, filed June 26, 2019). The Third Circuit affirmed in part, vacated in part, and remanded for the district court to consider whether to exercise its supplemental jurisdiction over two of Harris's state law claims: (1) deprivation of lawful property and loss of use; and (2) theft of property. *Harris v. Wetzel* (3d Cir., No. 19-2582, filed July 30, 2020), 2020 WL 4362113 (per curiam). Upon remand, the district court declined to exercise its supplemental jurisdiction and transferred the matter to the trial court for the purposes of addressing only the two state law claims. *Harris v. Pa. Dep't of Corr.* (W.D. Pa., No. 3:18-cv-99, filed Aug. 26, 2020), Original Record (O.R.) Item 19. As a result, relevant here are **only** Harris's claims for "deprivation of lawful property & loss of use"[3] and "theft of property."[4] (Compl. at 19.)

Notwithstanding that the Third Circuit limited Harris's suit to his two state law claims, Harris's factual allegations in his Complaint encompass all 40 of his

---

[2] Harris's Complaint is not comprised of individually numbered paragraphs. Thus, we cite to the page of the Complaint, as reflected by the handwritten numbering provided by Harris.
**(Footnote continued on next page…)**

claims.  As such, we reiterate that we are constrained by the Third Circuit to consider the factual allegations in the context of Harris's two state law claims of deprivation of property and loss of use and theft of property.

Harris avers that "[o]n three [] separate dates, Correctional Emergency Response Team(s), a.k.a. (CERT), [] subjected the entire [SCI-]Somerset to emergency lockdowns[,]" during which time his cell was searched.  (Compl. at 15.)  In the first search, Harris avers guards confiscated "legal paper exhibits/personal credentials," issued Harris a misconduct for possessing such material as "contraband and implements of escape[,]" and gave Harris a 30-day cell restriction and 6-month commissary restriction.  (*Id.*)  In the second search, Harris asserts "there w[ere] no notable violations other than the removal of excess items without a confiscation slip being written[.]"  (*Id.*)  In the third search, Harris contends he experienced "a massive retaliatory search[.]"  (*Id.*)  During the strip-down portion of the search, Harris alleges he was "verbally assaulted with very unkind language, degraded for [his] physical size and appearance, harassed for having a good supply of commissary, and was asked very inappropriate question[s] unrelated to the search at hand, all whil[]e standing nude and without [his] eyeglasses on."  (*Id.*)  Further, Harris alleges he was handcuffed, removed from his cell, and told to look at the floor and stand for over an hour.  (*Id.*)  According to the Complaint, during this time Harris heard two guards discuss his food supply, so he glanced into the cell and saw two guards eating his "Hershey's chocolate bar and vanilla cookies[.]"  (*Id.*)  When the guards saw Harris "peeking[,]" he contends he was "verbally attacked" and moved

---

[3] This claim is listed as cause of action 11 in the Complaint.  Count 11 was asserted against Superintendent, Unit Manager, Security Captain, and CERT.  (Compl. at 20-21.)

[4] This claim is listed as cause of action 33 in the Complaint.  Count 33 was asserted only against CERT.  (Compl. at 21.)

to a spot where he could no longer see the guards inside his cell. (*Id.*) Once the search was complete, Harris avers he was uncuffed and escorted back to his cell where he saw "a rather full and large bag of confiscated items . . . of which [he] could easily see was the vast majority of [his] non-perishable food/commissary, which was legally purchased and stored in [his] foot locker at [the] time." (*Id.* at 16.) Harris includes a list of confiscated items, which is included on page 29c of his Complaint. Harris estimates the value of the confiscated items was $47.44, listing the Hershey's chocolate bar as being worth $0.86 and the vanilla cookies as being worth $1.22. (*Id.* at 29c.) Harris states he did not receive a confiscation slip for the third search, which is required for all confiscations when items are removed for any reason. (*Id.* at 16.) Harris asserts he exhausted the internal grievance process. (*Id.* at 8, 16.)

Harris seeks "actual cost/loss of property," damages for "legal time, preparation of documents, cost(s) of filing," and "exemplary, punitive, emotional/mental/physically traumatic damages." (*Id.* at 30.) He also requests that the Court "issue judicial corrective orders, cease and desist orders, civil and criminal sanctions, administrative training and/or firing recommendations, and all other relief as deemed appropriate," including "prospective relief, preliminary relief, permanent relief, exemplary relief, special relief, relevant relief, customary monetary relief, injunctive and declaratory relief, punitive relief, actual relief, administrative sanctions, criminal charges, civil liberties re-edu[ca]tion and training, et al." (*Id.* at 31.)

Appellees filed POs asserting, *inter alia,* Harris's Complaint should be dismissed for failure to state a claim upon which relief may be granted (demurrer)

4

because Appellees are immune from suits alleging negligent or replevin acts.[5] (POs ¶¶ 18; Brief in Support of POs at 7-8.)[6] Following briefing and argument, the trial court issued a Memorandum and Order on September 28, 2021 (Memo. & Order). As to Appellees' demurrer, the trial court explained that, while sovereign immunity is generally pleaded as an affirmative defense, when on the face of a complaint the cause of action does not fall into an exception to sovereign immunity, it is appropriate to decide the issue on a preliminary objection. (Memo. & Order at 10.) The trial court stated that Appellees are Commonwealth parties for the purposes of sovereign immunity as they are employees of a Commonwealth agency, the Department of Corrections (DOC), and acted within the scope of their employment during the incidents in question. (*Id.* at 10-11.) The trial court found the facts alleged by Harris to be analogous to those in *Williams v. Pennsylvania Department of Corrections*. (Pa. Cmwlth., No. 695 M.D. 2016, filed September 11, 2017), in which this Court, acting in its original jurisdiction, sustained preliminary objections by DOC respondents on the basis of sovereign immunity in an action for replevin brought by an inmate seeking to recover damages for items that were confiscated.[7]

---

[5] Appellees also filed POs asserting that the Complaint violated Pennsylvania Rule of Civil Procedure 1028(a)(2) and (3), Pa.R.Civ.P. 1028(a)(2), and (3), respectively, as it included scandalous or impertinent matter, and was insufficiently pled. (POs ¶¶ 20-21.) The trial court sustained the PO pursuant to Rule 1028(a)(2) as to all Appellees except CERT. (Memorandum & Order at 5-9.) It overruled the PO asserting the Complaint was frivolous. (*Id.* at 15-17.) Nonetheless, as discussed more fully below, the trial court dismissed the Complaint upon sustaining the demurrer. (*Id.* at 9-15.) As the demurrer on the basis of sovereign immunity is dispositive, we focus on that issue.

[6] The POs and Brief in Support of POs may be found in the Original Record as Items 26 and 27.

[7] While not binding, unreported panel decisions of this Court may be considered persuasive authority pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

(Memo. & Order at 12.) Further, the trial court reasoned Harris did not allege negligent acts, rather he alleged intentional acts, which do not fall into the exceptions to sovereign immunity enumerated in Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b), commonly known as the Sovereign Immunity Act. (Memo. & Order at 13-14.) As such, the trial court concluded sovereign immunity barred Harris's claims against all Appellees and dismissed Harris's Complaint. (*Id*. at 15 & Order page.) Harris filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Harris argues the trial court erred in dismissing his Complaint on sovereign immunity grounds because he averred negligent conduct on the part of all Appellees. Harris also addresses the other POs, asserts a number of other arguments, and makes a number of allegations not pertinent to the two state law claims before the Court. Appellees respond that the trial court correctly determined Appellees are Commonwealth employees who acted within the scope of their employment, Harris alleged intentional wrongdoing, and intentional torts are protected by sovereign immunity. Further, Appellees contend that Harris failed to address the trial court's sovereign immunity analysis pertaining to his two state law claims and instead he focused on the other claims that the federal courts dismissed. Thus, Appellees assert the trial court appropriately dismissed the Complaint.

"In an appeal from a trial court order sustaining preliminary objections and dismissing a complaint, our scope of review is to determine whether an error of law was committed, or an abuse of discretion occurred." *In re Est. of Bartol*, 846 A.2d 209, 213 (Pa. Cmwlth. 2004) (citation omitted). Further, "we must . . . keep in mind that preliminary objections admit as true all well-pled facts and inferences reasonably deducible therefrom, but not conclusions of law." *Id*. (citation omitted).

6

"When ruling on preliminary objections, this Court shall sustain such objections and dismiss the action only in cases that are clear and free from doubt that the law will not permit recovery." *DeHart v. Horn*, 694 A.2d 16, 16 (Pa. Cmwlth. 1997).

In *Paluch v. Pennsylvania Department of Corrections*, we explained the applicability of sovereign immunity as follows:

> Sovereign immunity acts as a bar to suits against Commonwealth parties, including its officials and employees acting within the scope of their duties. 1 Pa.C.S. § 2310. Establishing a limited list of exceptions to immunity, the General Assembly adopted what is commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8502, 8521-8527. Section 8522 of the Sovereign Immunity Act waives "immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury [was] caused by a person not having available the defense of sovereign immunity," for specifically enumerated categories of acts. 42 Pa.C.S. § 8522. A "Commonwealth party" is defined in Section 8501 as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. Thus, when an employee of a Commonwealth agency . . . is acting within the scope of his or her duties, the employee is shielded by the doctrine of sovereign immunity from liability for tort claims arising from negligent acts that do not fall within the statutory exceptions listed in Section 8522(b) of the Sovereign Immunity Act. 1 Pa.C.S. § 2310; 42 Pa.C.S. § 8522(a)-(b). **Sovereign immunity is not waived for intentional acts committed by a Commonwealth employee acting within the scope of his or her employment.** *La Frankie v. Miklich*, . . . 618 A.2d 1145, 1149 ([Pa. Cmwlth.] 1992).

*Paluch*, 175 A.3d 433, 437-38 (Pa. Cmwlth. 2017) (emphasis added). Thus, to determine whether a Commonwealth employee is protected from liability under sovereign immunity, we must consider "whether the Commonwealth employee was acting within the scope of [their] employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of

the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity." *La Frankie*, 618 A.2d at 1149. One of the exceptions to sovereign immunity is for "damages caused by . . . [t]he care, custody[,] or control of personal property in the possession or control of Commonwealth parties." 42 Pa.C.S. § 8522(b)(3).

As the thoughtful opinion authored by President Judge D. Gregory Geary explains:

> [DOC] is a Commonwealth agency for the purposes of sovereign immunity. Further, all other [Appellees] are "Commonwealth parties[,"] as they are employees of [DOC]. An employee's conduct is within the scope of his or her employment when: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and (c)] it is actuated, at least in part, by a purpose to serve the master." *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. 1989) (quoting Restatement (Second) of Agency § 228 [Am. Law Inst. 1958]). Here, it is clear that all [Appellees] were acting within the scope of their employment at [DOC]. Superintendent [] and Unit Manager [] evaluated [Harris's] grievance, which is an administrative duty falling within the scope of their employment. The CERT officers acted within the scope of their employment when they conducted emergency cell searches to maintain order and security in the prison. As such, all named [Appellees] to [Harris's] civil action are immune from damages arising out of negligent acts, unless an exception to sovereign immunity applies.
>
> . . . .
>
> The two [state law] causes of action filed by [Harris] in the instant case were founded upon the wrongful taking and detention of his personal property, which was confiscated from his prison cell by unnamed and unidentified CERT guards of SCI-Somerset. . . .
>
> Here, [Harris] fails to allege any negligent act committed by the CERT guards during the searches of his prison cell at SCI-Somerset. [Harris] details how his cell was searched three [] times, alleges that the CERT guards ate some of his food during the third search, and describes how they confiscated additional food and commissary items. Assuming

8

[Harris's] allegations are true, the CERT guards' actions of eating and confiscating [Harris's] food/commissary items were intentional, and not negligent acts. When an employee of a Commonwealth agency is acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity for the imposition of liability for intentional tort claims. *La Frankie . . .*, 618 A.2d [at] 1149 . . . (citing *Yakowicz v. McDermott*, 548 A.2d 1330 (Pa. 1998)). Intentional tort claims are barred by sovereign immunity and the exception to sovereign immunity under Section 8522(b)(3) for damages to personal property does not apply to intentional damage to personal property. *Williams v. Stickman*, 917 A.2d 915, 918 (Pa. Cmwlth. 2007).

The proper test to determine if a Commonwealth employee is protected from liability pursuant to 42 Pa.C.S. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the exceptions to sovereign immunity. *La Frankie*, 618 A.2d at 1149. Here, it is clear [DOC] is a Commonwealth agency and the CERT guards are Commonwealth employees. Thus, the CERT guards are only liable if their actions were outside the scope of their employment. . . . A search of an inmate's cell by the CERT guards certainly falls within the scope of their employment, as it is the kind of work they are employed to perform, it occurs at the prison where they are assigned to work, and it is necessary to maintain order and security within the prison.

The CERT guards' actions during searches of [Harris's] cell were intentional, not negligent, and occurred within the scope of their employment. . . . [Harris] asserts that the "care, custody, and control" exception to sovereign immunity applies as to the CERT guards, pursuant to 42 Pa[]C.S.[] § 8522(b)(3). However, [Harris's] factual summation pleads intentional, rather than negligent acts, committed by the CERT guards. The alleged acts committed by the CERT guards of eating [Harris's] commissary and seizing [Harris's] belongings as contraband during emergency cell searches were intentional acts. These acts do not fit within one of the exceptions to sovereign immunity, as they are not a product of negligence, and therefore suit is barred against these unnamed and unidentified CERT guard [Appellees].

There is a much simpler argument which bars [Harris's] claims against the other named [Appellees]. In *DuBree v. Commonwealth*, the

9

Pennsylvania Supreme Court opined that individual public employees are not vicariously liable for the actions of subordinates merely because the subordinate is in the employee's chain of command. 393 A.2d 293 (Pa. 1978). The facts must indicate that each defendant's conduct is actionable. *Id*. In the instant matter, [Harris] pleaded specific facts relating to the care, custody, and control of [Harris's] property only by . . . [CERT]. . . . [Harris] pleaded that his legal papers, credentials, and a large majority of his non-perishable food/commissary [were] confiscated from him by CERT guards without a confiscation slip ever being provided. . . . [Harris's] Complaint fails to identify any of the other [Appellees] as having personal responsibility or involvement in the loss of or damage to his property. Thus, the care, custody, and control exception to sovereign immunity does not apply, and suit is barred against all other named and identified [Appellees].

(Trial Ct. Op. at 10-11, 12, 13-15.)

We agree with the trial court's reasoning pertaining to the confiscation of Harris's papers, credentials, and bag of commissary items during the emergency searches conducted throughout SCI-Somerset, but there is a question of fact as to whether the CERT guards acted within the scope of their employment when they allegedly ate Harris's chocolate bar and cookies during the third search. "[W]here more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the [fact finder]." *Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019). Further,

the fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business. . . . In such cases, the facts may indicate that the servant is merely using the opportunity [a]fforded by the circumstances to do the harm, and is therefore acting outside the scope of employment.

*Id*. at 1073 (citation and internal quotation marks omitted). Arguably, the CERT guards' alleged conduct of eating Harris's chocolate bar and cookies during the third search was not actuated by an intent to perform CERT's business, but rather

amounted to an opportunity to cause harm afforded by the circumstances of the search. Accordingly, the trial court erred in sustaining Appellees' PO as it related to Harris's state law claims pertaining to the CERT guards allegedly consuming Harris's food because it is a question of fact whether the CERT guards were acting within the scope of their employment while doing so.

However, the trial court's error is harmless as Harris's remaining state law claims pertaining to the consumption of the chocolate bar and cookies equate to an amount in controversy of $2.08. Section 6601 of the Prison Litigation Reform Act (PLRA) states that a frivolous claim is one that is "[l]acking an arguable basis either in law or in fact." 42 Pa.C.S. § 6601. In *Williams v. Beard*, 67 A.3d 182, 184 (Pa. Cmwlth. 2013), this Court rejected a federal paradigm that compares the actual amount in controversy to the filing fees to conclude whether a claim is frivolous under the Federal Prison Litigation Reform Act, 28 U.S.C. § 1915. We reasoned the PLRA definition of frivolous is not as broad as its federal counterpart. *Id.* Yet, we stated that "[w]e do not interpret the [PLRA] as requiring our courts to waste time on nonsense, such as a suit to recover the value of a lost pack of gum." *Id.* In that case, we held the value of the allegedly lost footlocker, which was $71.47, while "not of great value" was not "trivial" either. *Id.* However, "we d[id] not rule out the possibility that a suit seeking monetary compensation so trifling as to render the claim devoid of genuine merit, or to give rise to an inference that it is brought simply for purposes of harassment, may well be deemed frivolous under our [PLRA]." *Id.* This is such a case. While we acknowledge that commissary items are extremely valuable to prisoners and sympathize with Harris that some of his commissary items were wrongly consumed by CERT guards, under the circumstances we decline to remand this issue because the amount in controversy is "trifling" compared to the

11

costs of a remand and litigating the two state law claims for those limited items.[8] Accordingly, we affirm.[9]

_____

**RENÉE COHN JUBELIRER,** President Judge

---

[8] "[T]his Court may affirm on grounds different than those relied upon by the [trial] court . . . if such grounds for affirmance exist." *Motor Coils MFG/WABTEC v. Workers' Comp. Appeal Bd. (Bish)*, 853 A.2d 1082, 1087 n. 9 (Pa. Cmwlth. 2004).

[9] Due to our ruling, we need not reach Harris's remaining arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terrence Andrew Harris,        :
                Appellant    :
                               :

             v.              :   No. 1199 C.D. 2021
                               :

Pennsylvania Department      :
of Corrections, et al.           :

## **O R D E R**

**NOW**, November 8, 2023, the Order of the Court of Common Pleas of Somerset County, dated September 28, 2021, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge